**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALESSANDRO JACOB, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RUBY TUESDAY, INC., JAMES J. BUETTGEN, AND JILL M. GOLDER,<br><br>Defendants. | Case No:<br><br>CLASS ACTION<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Alessandro Jacob, ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Ruby Tuesday, Inc. ("Ruby Tuesday" or the "Company"), as well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased Ruby Tuesday securities from July 24, 2015 through April 7, 2016, both dates inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b) as Defendants conducts business in this district.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Ruby Tuesday securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Defendant Ruby Tuesday is incorporated in Georgia with its principal executive offices located in 150 West Church Avenue, Maryville, Tennessee 37801. The Company operates restaurants in this district. Ruby Tuesday securities trade on the New York Stock Exchange ("NYSE") under the ticker symbol "RT." Ruby Tuesday owns, operates, and

franchises a casual dining restaurant chain that operations in the United States and internationally.

8. Defendant James J. Buettgen ("Buettgen") has served as the Company's Chief Executive Officer ("CEO"), President, and Chairman of the Board of Directors throughout the Class Period.

9. Defendant Jill M. Golder ("Golder") has served as the Company's Chief Financial Officer ("CFO") since the beginning of the Class Period until her resignation announced on April 7, 2016 effective on April 11, 2016.

10. The Defendants Buettgen and Golder are sometimes referred to herein as the "Individual Defendants."

11. Defendant Ruby Tuesday and the Individual Defendants are referred to herein, collectively, as the "Defendants."

12. Each of the Individual Defendants:

a. directly participated in the management of the Company;

b. was directly involved in the day-to-day operations of the Company at the highest levels;

c. was privy to confidential proprietary information concerning the Company and its business and operations;

d. was involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

e. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and

f. approved or ratified these statements in violation of the federal securities laws.

13. As officers, directors, and controlling persons of a publicly-held company whose securities are and were registered with the SEC pursuant to the Exchange Act, and was traded on NYSE and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate accurate and truthful information promptly with respect to the Company's business prospects and operations, and to correct any previously-issued statements

that had become materially misleading or untrue to allow the market price of the Company's publicly-traded stock to reflect truthful and accurate information.

14. Ruby Tuesday is liable for the acts of the Individual Defendants and its employees under the doctrine of respondeat superior and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

15. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Ruby Tuesday under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Background

16. Before and during the Class Period, many casual dining restaurant chains were engaging in aggressive promotional activities. For example:

   a) On July 8, 2015, Applebee's, the largest casual dining restaurant chain, announced that on July 21, 2015 it would be offering free appetizers to guests for its 35 anniversary and as part of its "Taste The Change" Day and promote new menu items.

   b) In September 2015, Olive Garden, another casual dining restaurant chain, launched its Pasta Passes promotion in which those with pasta passes could eat as much pasta from Olive Garden between October 5, 2015 and November 22, 2015.

   c) In October 2015, Applebee's announced it was giving a Mystery Value Bonus Cards for purchases of $50 in gift cards.

   d) In November 2015 it was announced that Red Lobster, another casual dining restaurant chain, was giving away free appetizers or a $10 off coupon when you buy a $50 gift card before December 31, 2015.

   e) In November 2015 it was announced that TGI Fridays, another casual dining restaurant chain, was away a $5 bonus card for every $25 spent on e-gift cards.

  f) On December 10, 2015, Red Robin, another casual dining restaurant chain gave away free chicken burgers to those named Christopher, Christine, Nicole, or Nicholas in honor of the holiday season.

17. Moreover, there were many reports during the Class Period discussing the trend of declining customers and traffic weakness in the casual dining restaurant industry as well as high competition and promotional activities.

18. On July 10, 2015, *SeekingAlpha* published an article entitled "Higher guest spending boosts restaurants in Q2." The article stated in relevant part:

> Comparable-store sales in the restaurant industry rose 1.8% in Q2, according to the latest read from Black Box Intelligence.
>
> It's the fourth month in a row of rising comps in the sector despite some ***soft traffic trends.***
>
> The average check per guest was up 3.4% during the quarter to take up the slack from the 1.7% drop in traffic.
>
> ***Weather was a factor in the Southwest where traffic fell 3.4% Y/Y.***
>
> (Emphasis added).

19. On October 8, 2015, TDn2K's™ Black Box Intelligence™, a group of restaurant industry experts who provide statistics and analysis for its restaurant members – including Ruby Tuesday – through its Restaurant Industry Snapshot™ published an article entitled, "Positive Sales Growth Continues During Q3; Concerns Emerge for Q4 Forecast." The article includes insight from Victor Fernandez, the Executive Director of Insights and Knowledge for TDn2K, stating in relevant part:

> "We have just experienced the best five quarters since the recession based on sales growth, ***but concern remains for chain restaurants overall due to the continuously falling guest counts"*** says Victor Fernandez, Executive Director of Insights and Knowledge for TDn2K.
>
>     \*   \*   \*
>
> ***"Looking forward to Q4, we must consider the effect of the winter weather in the sales results****. Last year's Q4 and Q1 2015 posted sales growth rates of 2.5% and 2.9% respectively, primarily aided by more favorable weather conditions

during the winter months than the previous year," observed Fernandez. "*As we enter the last quarter of the year, the rollover rate and weather could again become an issue, especially during December.*"

(Emphasis added).

20. On October 12, 2015, after the market closed, *SeekingAlpha* published an article entitled, "Restaurant traffic under pressure." The article discussed the traffic and the amount of the average guest check at casual dining restaurants including Ruby Tuesday. The article states in relevant part:

- Restaurant sales rose 1.5% in Q3 on a comparable-store basis, a deceleration from the 1.8% growth seen in Q2, according to data from Black Box Intelligence.
- A higher average guest check during the quarter, helped to offset a *1.2% decline in traffic*.
- *Black Box warns of continued traffic weakness in Q4 due to "stagnant" growth in employment and wages. There's also a tougher weather comparison with last year viewed as an overall favorable winter season for traffic*.

(Emphasis added).

21. On October 20, 2015, Brinker International, Inc., owner of the casual dining restaurant chains Chili's Bar & Grill and Maggiano's, stated that many casual dining restaurants have been offering aggressive discounts and deal rates at their restaurants, which hurt Brinker's first quarter ending September 23, 2105 earnings.

**Materially False And Misleading Statements**

22. On July 23, 2015, after the market closed, the Company issued a press release entitled, "Ruby Tuesday Reports Fourth Quarter and Fiscal 2015 Results and Provides Fiscal 2016 Outlook." The press release provided guidance for fiscal year ending May 31, 2016, stating in part:

**Fiscal 2016 Outlook**
*Management estimates Adjusted EPS to range from $0.12 to $0.17, based on the following assumptions*:

6

- **Same-Restaurant Sales –** Fiscal 2016 same-restaurant sales to be in the range of flat to up 2%. First quarter-to-date, same-restaurant sales are in-line with this range.
- **Unit Development –** A net reduction of 11-14 Company-owned Ruby Tuesday restaurants.
- **Restaurant Level Margins –** Fiscal 2016 Restaurant Level Margins ranging from 17.0% to 17.5% of restaurant sales and operating revenue which compares to 16.7% in fiscal 2015.
- **Selling, General, and Administrative Expense –** Fiscal 2016 SG&A ranging from $116 to $120 million, compared to $115.3 million in fiscal 2015.
- **Effective Tax Rate and Taxes –** An effective tax rate of approximately 44%. As discussed below, the Company is limited in the amount of tax credits that can be utilized each year based upon taxable income for that year and currently cannot recognize a full benefit of any year's currently generated tax credits or tax credit carry-forwards.
- **Capital Expenditures –** Fiscal 2016 capital expenditures ranging from $34 to $38 million.

(Emphasis added).

23. On July 23, 2015, the Company held a conference call to discuss Ruby Tuesday's fiscal 2015 earnings and the guidance issued for fiscal 2016. On the conference call, Defendant Golder stated in relevant part:

> Now let's turn into our outlook for fiscal year 2016. *We estimate fiscal 2016 adjusted earnings per share, excluding closures, impairments, severance and other items outlined in today's release, to be in the range of $0.12 to $0.17.* This guidance is predicated upon the following factors. Same-restaurant sales of flat to up 2% for the full year. In the first quarter, same-restaurant sales quarter-to-date are in line with this range. Annual restaurant level margins up 17% to 17.5% compared to 16.7% in fiscal 2015.

(Emphasis added).

24. On October 8, 2015, the Company issued a press release entitled, "Ruby Tuesday Reports First Quarter Fiscal 2016 Results." The press release reaffirmed previously issued guidance, stating in relevant part:

- **Fiscal 2016 Guidance reaffirmed**

\*   \*   \*

**Fiscal 2016 Outlook**

*The Company is reaffirming its full-year Adjusted Net Income per diluted share guidance of $0.12 to $0.17*, based on the following assumptions:

- **Same-Restaurant Sales –** Fiscal 2016 same-restaurant sales to be in the range of flat to up 2%. Second quarter-to-date same-restaurant sales support this range.
- **Unit Development –** A net reduction of 11-14 Company-owned Ruby Tuesday restaurants.
- **Restaurant Level Margins –** Fiscal 2016 Restaurant Level Margins ranging from 17.0% to 17.5% of restaurant sales and operating revenue which compares to 16.9% in fiscal 2015.
- **Selling, General, and Administrative Expense –** Fiscal 2016 SG&A ranging from $116 to $120 million, compared to $115.3 million in fiscal 2015.
- **Tax Rate –** Adjusted Net Income is calculated using the statutory tax rate of 39.69%. This provides a more consistent tax rate to facilitate review and analysis of the Company's financial performance. The Company is limited in the amount of tax credits that can be utilized each year based upon taxable income for that year and cannot recognize a full benefit of any year's currently generated tax credits or tax credit carry-forwards due to the Company's tax valuation allowance.
- **Capital Expenditures –** Fiscal 2016 capital expenditures ranging from $34 to $38 million.

(Emphasis added).

25.     On October 8, 2015, the Company held a conference call to discuss Ruby Tuesday's first quarter of 2016 earnings results. On the call Defendant Buettgen stated in relevant part:

Afterwards, Jill will share the details of our quarterly results and *reaffirmed guidance for fiscal 2016.*

\*     \*     \*

Importantly, based on the first quarter and the continued progress we are making on our brand transformation, *we are reaffirming our net income per share guidance for fiscal 2016*. Jill will provide more details on this in a moment.

(Emphasis added).

26.     On the same call, Defendant Golden stated in relevant part:

8

As JJ mentioned, *we reaffirmed our fiscal year 2016* adjusted earnings per share guidance excluding closures impairment, severance and other items outlined in today's release to be in the range *of $0.12 to $0.17 per share.*

(Emphasis added).

27.     On January 7, 2016, the Company issued a press release entitled, "Ruby Tuesday, Inc. Reports Fiscal Second Quarter 2016 Financial Results." The press release reaffirmed previously issued guidance, stating in relevant part:

*Reaffirms Adjusted Net Income Per Share Guidance for Fiscal Year 2016*

*     *     *

**Fiscal Year 2016 Financial Outlook**
*The Company is reaffirming its full-year Adjusted Net Income per share guidance of $0.12 to $0.17* based on the following updated assumptions:

- **Same-restaurant sales –** Fiscal 2016 same-restaurant sales of flat to up 1% (vs. flat to up 2% previously). Third quarter-to-date same-restaurant sales support this range.
- **Unit Development** – A net reduction of 11-14 corporate-owned Ruby Tuesday restaurants.
- **Restaurant Level Margin** – Fiscal 2016 restaurant level margins of 17.3% to 17.6% (vs. 17.0% to 17.5% previously).
- **Selling, General, and Administrative Expense** – Fiscal 2016 SG&A ranging from $114 to $117 million (vs.$116 to $120 million previously).
- **Tax Rate** – Adjusted Net Income is calculated using the statutory tax rate of 39.69%. This provides a more consistent tax rate to facilitate review and analysis of the Company's financial performance. The Company is limited in the amount of tax credits that can be utilized each year based upon taxable income for that year and cannot recognize a full benefit of any year's currently generated tax credits or tax credit carry-forwards due to the Company's tax valuation allowance.
- **Capital Expenditures** – Fiscal 2016 capital expenditures ranging from $36 to $38 million (vs. $34 to $38 million previously).

(Emphasis added).

28.     On January 7, 2016, the Company held a conference call to discuss Ruby Tuesday's second quarter of 2016 earnings results. On the call Defendant Buettgen stated in relevant part:

Lastly, Jill will share the details of our quarterly financial results and *reaffirm our annual adjusted earnings per share guidance for fiscal 2016*.

9

(Emphasis added).

29.     On the same call, Defendant Golden stated in relevant part:

Based on our results for the first half of fiscal 2016 and the outlook for the rest of the year, *we're reaffirming annual adjusted earnings per share guidance in the range of $0.12 to $0.17 per share*.

This guidance is based on the following updated assumption. Same restaurant sales of flat to up 1% for the full year. This compares to our previous expectation of flat to up 2%. Third quarter to date same-restaurant sales support this revised range.

(Emphasis added).

30.     The above statements contained in ¶¶22-29 were false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose that: (1) fiscal year 2016 guidance was unobtainable and unrealistic; (2) promotional activity by its peers was adversely impacting Ruby Tuesday's performance; (3) the continuing decline in casual dining customers and traffic adversely impacted Ruby Tuesday's performance; and (4) as a result of the foregoing, Defendants' statements about Ruby Tuesday's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

## The Truth Slowly Emerges

31.     On April 7, 2015, after the market closed, the Company issued a press release entitled, "Ruby Tuesday, Inc. Reports Fiscal Third Quarter 2016 Financial Results." The press release revised guidance for fiscal 2016. The press release states in relevant part:

JJ Buettgen, Chairman of the Board, President, and Chief Executive Officer, commented, "*Our third quarter was a volatile period affected by weather, softness in the casual dining industry, and increased promotional activity by our peers*. Despite this challenging environment, we continue to believe that our key brand initiatives will drive an improvement in guest counts."

\*   \*   \*

**Fiscal Year 2016 Financial Outlook**

10

> ***The Company is updating its full-year Adjusted Net Income per share guidance to $0.05 to $0.08 (vs. $0.12 to $0.17 previously)*** based on the following updated assumptions:
>
> - **Same-Restaurant Sales –** Fiscal 2016 same-restaurant sales down approximately 1% (vs. flat to up 1% previously).
> - **Unit Development** – A net reduction of 11-14 corporate-owned Ruby Tuesday restaurants.
> - **Restaurant Level Margin** – Fiscal 2016 restaurant level margin of 16.7% to 17.0% (vs. 17.3% to 17.6% previously).
> - **Selling, General, and Administrative Expense** – Fiscal 2016 SG&A ranging from $110 million to $112 million (vs. $114 million to $117 million previously).
> - **Tax Rate** – Adjusted Net Income is calculated using the statutory tax rate of 39.69%. This provides a more consistent tax rate to facilitate review and analysis of the Company's financial performance. The Company is limited in the amount of tax credits that can be utilized each year based upon taxable income for that year and cannot recognize a full benefit of any year's currently generated tax credits or tax credit carry-forwards due to the Company's tax valuation allowance.
> - **Capital Expenditures** – Fiscal 2016 capital expenditures ranging from $34 million to $36 million (vs. $36 million to $38 million previously).
>
> (Emphasis added).

32.     On April 7, 2016, the Company held a conference call to discuss the third quarter of 2016 results. Sue Briley, the Vice President of Finance for Ruby Tuesday stated in relevant part:

> Based on the results for the first nine months of fiscal 2016 and our outlook for the fourth quarter, ***we are revising our annual adjusted earnings per share guidance to a range of $0.05 to $0.08 per share from $0.12 to $0.17 per share previously.***
>
> This guidance is based on the following updated assumptions. Same-restaurant sales as down approximately 1% for the full year. This compares to our previous expectation of flat to up 1%. A net reduction of 11 to 14 Company-owned Ruby Tuesday restaurants, annual restaurant-level margins of 16.7% to 17%, which compares to our prior range of 17.3% to 17.6%. We continue to expect commodity inflation for the year of about 1% and adjusted SG&A expenses of $110 million to $112 million versus our earlier range of $114 million to $117 million.
>
> (Emphasis added).

11

33.     On this news, shares of Ruby Tuesday fell $0.62 per share or over 11.8% from its previous closing price to close at $4.60 per share on April 8, 2016, damaging investors.

34.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Ruby Tuesday securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

36.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Ruby Tuesday securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Ruby Tuesday or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

37.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

38.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

39. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Ruby Tuesday;
- whether the Individual Defendants caused Ruby Tuesday to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Ruby Tuesday securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

40. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

41. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Ruby Tuesday securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Ruby Tuesday securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

42. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

43. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court *in Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

### **NO SAFE HARBOR**

44. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forwardlooking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the

speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Ruby Tuesday who knew that the statement was false when made.

## COUNT I

### Violations of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

45.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

47.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Ruby Tuesday securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Ruby Tuesday securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

48.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence

the market for Ruby Tuesday securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Ruby Tuesday's disclosure controls and procedures.

49.     By virtue of their positions at Ruby Tuesday, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

50.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Ruby Tuesday, the Individual Defendants had knowledge of the details of Ruby Tuesday's internal affairs.

51.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Ruby Tuesday. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Ruby Tuesday's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Ruby Tuesday securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Ruby Tuesday's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Ruby Tuesday securities at artificially

inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

52. During the Class Period, Ruby Tuesday securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Ruby Tuesday securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Ruby Tuesday securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Ruby Tuesday securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

53. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of Section 20(a) of The Exchange Act
### Against The Individual Defendants

55. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

56.     During the Class Period, the Individual Defendants participated in the operation and management of Ruby Tuesday, and conducted and participated, directly and indirectly, in the conduct of Ruby Tuesday's business affairs. Because of their senior positions, they knew the adverse non-public information about Ruby Tuesday's operations, current financial position and future business prospects.

57.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Ruby Tuesday's business practices, and to correct promptly any public statements issued by Ruby Tuesday which had become materially false or misleading.

58.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Ruby Tuesday disseminated in the marketplace during the Class Period concerning the Company's disclosure controls and procedures. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Ruby Tuesday to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Ruby Tuesday within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Ruby Tuesday securities.

59.     Each of the Individual Defendants, therefore, acted as a controlling person of Ruby Tuesday. By reason of their senior management positions and/or being directors of Ruby Tuesday, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Ruby Tuesday to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Ruby Tuesday and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

60.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Ruby Tuesday.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as her reasonable attorneys' fees, expert fees and other costs; and

D.Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: April 29, 2016Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

 /s/Phillip Kim
Laurence M. Rosen, Esq. (LR5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Avenue, 34th Floor
New York, NY, 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenelgal.com

Counsel for Plaintiff